## JOSHUA INGRAM v. JAMES GASKINS, qui tam.

High Court of Errors and Appeals.   June, 1822.

*Ridgely's Notebook IV, 33.*

THE CHANCELLOR. I am of opinion that it is not necessary that the offense stated in this declaration should be charged to have been committed against the *Acts* of the General Assembly, because the Act entitled "An additional Supplementary Act to an act, intituled, An act to prevent the exportation of slaves, and for other purposes," 2 Del.Laws 942, alone gives the action. By the "Act to punish the practice of kidnapping free Negroes and free Mulattoes, and for other purposes," 2 Del.Laws 1093, s. 3, the Justices of the Court of General Quarter Sessions of the Peace and Gaol Delivery, or any two of them, are substituted for the five justices of the peace, in open sessions, as mentioned in

the additional Supplementary Act, etc.; but still it is upon this Supplementary Act alone that the action is founded.

The Constitution had repealed that part of this last mentioned Act by which the five justices of the peace, in open sessions, were authorized to grant a license for the exportation of a slave, by abrogating the power of the justices of the peace to hold a Court of Quarter Sessions after the first Tuesday of October, 1793; and therefore by the Act to punish the practice of kidnapping the authority granted to the present Justices of the Court of General Quarter Sessions, or any two of them, is ingrafted in and made part of the additional Supplementary Act etc.; but no suit is given by this last mentioned Act, and it was the intention of the legislature merely to supply a defect in the previous law in the power to grant licenses created by the Constitution. In the second section of the Act to punish the practice of kidnapping etc., special bail is required to be given by persons prosecuted for offenses committed against the additional Supplementary Act etc., and it seems to have been considered by the legislature that the action was given by that Act alone. The Act to punish the practice of kidnapping etc. in no form creates an offense or provides a remedy in relation to the exportation of slaves, and consequently an action cannot be founded on it.

The case of *Andrews v. The Hundred of Lewknor*, Cro.Jac. 187, is similar to the present, because, as the court then said, the action was grounded only upon the Statute of Winton, 13 Edw. I, c. 2, which gives the penalty and remedy, and the Statute 27 Eliz., c. 13, only shows how the examination shall be and in what time before the action brought. Lee, C. J., in *Merrick v. The Hundred of Osselstone*, Rep.T.H. 409, Andr. 115, also says that the action is founded upon the Statute of Winton only; and the subsequent Acts of Parliament do not entitle the plaintiff to the action, but only restrain him in the manner of suing. And so here the Act to punish the practice of kidnapping etc. gives no action but only supplies a defect in the additional Supplementary Act. The law stands precisely as if the additional Supplementary Act, 2 Del.Laws 942, had been re-enacted with the third section of the Act to punish the practice of kidnapping etc., 2 Del.Laws 1094, the whole making but one Act as to the granting licenses, but more especially as to the penalty and the remedy.

It is no error that the verdict was rendered for the sum mentioned in the *narratio*. This is the usual mode for rendering verdicts when the suit is brought for a penalty or for a certain sum, and is sufficiently certain.

And the form in which the judgment is entered is well enough; for it should be considered as if drawn up at full length with the legal precision in such cases.

The plaintiff below could not recover damages for the detention of the debt, because the debt did not accrue until the judgment was recovered. 4 Burr. 2018. The conclusion of the declaration, that the plaintiff Gaskins is injured and hath damage, is mere surplusage. The costs have been released; and if judgment had been rendered for the costs or damages, the whole judgment would not have been erroneous, but only so much as related to the costs or damages, or both; and the judgment might be reversed for part and affirmed as to the other part.

The seventh error assigned I do not perfectly understand. The plaintiff below in his declaration named the slave, and this seems to be considered as an error, but I do not perceive in what manner this particularity can be erroneous. It might have imposed some difficulty at the trial; but as the jury has found the fact, it can be no error and would not have been a good cause of demurrer.

It is surplusage only in the declaration to allege that "the defendant below sold with an intention to export etc. without the license or permit first had and obtained from five justices of the peace of the county where the owner or owners of such negro slave did reside, in open sessions," because such justices had no authority to grant such license or permit, as I have before mentioned. And if the point of objection turns on these words, "did reside," [it] is now immaterial. The Act intended that five justices of the peace of the same county in which the owner resided should grant the license in open sessions, but now the justices of the peace having no such authority, all that part of the declaration is unimportant and should be rejected; and then the declaration would read thus: "that the said Ingram, on such a day and year, at Sussex County, did sell etc. without license or permit first had and obtained from the Justices of the Court of General Quarter Sessions of the Peace and Gaol Delivery, or any two of them," which would have the declaration correct in this particular.

I perceive no error and am of opinion that the judgment should be affirmed.

Judgment was unanimously affirmed at an adjourned court, October, 1822, by RIDGELY, CHANCELLOR, JOHNS, Chief Justice of the Supreme Court, DAVIS, Justice of the Supreme Court, and STOUT, Justice of the Court of Common Pleas.